Scott Edelsberg (SBN 330090)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (305) 975-3320

*Attorney for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN BRISTOW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GAMMA BILLING INC. d/b/a EVIL ANGEL,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Jordan Bristow ("Plaintiff"), on behalf of himself and all others similarly situated, brings this complaint against Defendant Gamma Billing, Inc. d/b/a Evil Angel ("Evil Angel" or "Defendant"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by his counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff, which are based on his personal knowledge.

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant arising from its deceptive and fraudulent billing practices.

2. Defendant operates an adult entertainment (www.evilangel.com).

3. Defendant lures consumers into providing their credit card information based on the promise of a one-time payment for short trial memberships. Then, without consumers' consent, Defendant enrolls consumers into recurring membership plans.

4. Defendant's membership signup portal does not mention anything about automatic renewal or recurring charges. Rather, Defendant is regularly tricking consumers into signing up for recurring plans under the (false) impression that they are only signing up for a trial or stated term (e.g., 30 days).

5. In fact, Defendant exploits their membership offers to sneak additional and expensive subscription charges onto users' credit cards, hoping consumers overlook the charges on their credit card bill.

6. Worst yet, Defendant fails to allow subscribers to cancel their membership plans. Instead, Defendant continues to charge consumers unwanted recurring fees even after they attempt to cancel their membership.

7. Plaintiff signed up for a three-day trial membership and, out of an abundance of caution, and without being required to do so, proactively cancelled his membership within the three-day period. Despite cancelling, Plaintiff later learned that he was assessed several sporadic and additional fees for the underlying membership. Plaintiff tried to dispute the charges to no avail and ultimately had to inform his bank to decline further charges from Defendant. Defendant continues to (unlawfully) charge Plaintiff to this day.

8. Defendant's conduct amounts to a bait and switch, violates state consumer protection law, and breaches its contract with consumers.

9. Plaintiff and Class members have been injured by Defendant's deceptive and fraudulent practices. Plaintiff brings this action on behalf of himself, the putative Classes,

and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and injunctive and declaratory relief on behalf of the general public to prevent Defendant from continuing to engage in its illegal practices described herein.

## PARTIES

10. Plaintiff Jordan Bristow is a citizen and resident of Texas.

11. Defendant Gamma Billing Inc. is a California corporation with its headquarters in Santa Clarita, California. Defendant is engaged in the business of providing adult entertainment to consumers, including Plaintiff and members of the putative Class.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff and one defendant.

13. This Court has personal jurisdiction over Defendant because Defendant is incorporated and headquartered in California.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant resides in and is subject to personal jurisdiction in this District and a substantial portion of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I. Pornography is a Multibillion Dollar Business**

15. According to a study, 30% of all data transferred across the Internet is pornography and pornography sites get more visitors each month than Netflix, Amazon and Twitter combined.[1]

---

[1] Alexis Kleinman, *Porn Sites Get More Visitors Each Month Than Netflix, Amazon And Twitter Combined*, Huffington Post (Dec. 6, 2017), https://www.huffpost.com/entry/internet-porn-stats_n_3187682.

16. The global pornography industry is worth around $97 billion, with an estimated $12-14 billion coming from the United States.[2] Internet pornography makes up about 20% of total e-commerce sales in the United States. *See id*.

17. An estimated 40 million Americans regularly visit porn sites. *See id*. In 2016, it was estimated that 10.5 percent of U.S. men have paid for Internet pornography subscriptions, a figure that is likely higher today.[3]

18. Yet, as ubiquitous as it is, the pornography industry remains highly unregulated and remains fertile ground for fraudulent business practices such as those described herein.

19. This lawsuit seeks to hold Defendant accountable for a practice that, in any other industry, would have ended years ago.

## II. Evil Angel is a Popular Membership-Based Website

20. Evil Angel markets itself as a top site for adult content.

21. Unlike many other websites offering similar content, Evil Angel is not free, at least not to access and use the site. Instead, access to Evil Angel content requires a "subscription."

22. Evil Angel offers several subscription programs, which vary by price and length of time.

## III. Plaintiff was Deceived into Paying Monthly Subscription Fees, Even After Attempting to Cancel

23. In March 2023, Plaintiff signed up for the Evil Angel three-day trial membership for $2.95.

---

[2] Jannik Linder, *Pornography Industry Statistics* (Jan. 9, 2024), https://gitnux.org/pornography-industry-statistics/#:~:text=It%20is%20estimated%20to%20be,visit%20porn%20sites%20each%20month.

[3] Lea Rose Emery, *How Many Men Actually Pay for This?* (Oct. 13, 2016) Bustle, https://www.bustle.com/articles/189498-how-many-men-actually-pay-for-porn-one-in-10-guys-have-paid-porn-subscriptions (last accessed May 15, 2021).

24. At the time Plaintiff signed up for a membership, the membership screen looked similar to this:



25. Further, at the time Plaintiff signed up, an advertisement at the bottom of the page read: "NO pre-checked cross-sales, NO unexpected charges!"

26. These plans promise a commitment to access Evil Angel's content for the specified period: 365 days, 30 days, or a 3-day trial. The membership signup page is completely devoid of any notice that the membership plans would automatically renew. Stated differently, Defendant failed to present the automatic renewal offer terms in a clear and conspicuous way.

27. Moreover, the promise of a shorter trial period (compared to longer trials) strongly implies that this will be a "one-time" charge with be no further charges or, at the minimum, a user may cancel their trial before the period is up.

28. Based on these representations, Plaintiff, like other reasonable consumers, selected a membership plan and clicked the large yellow "Proceed to Checkout" button on the page without realizing that, by doing so, it would be impossible to cancel his subscription and he would be subject to automatic renewal.

29. Further, by using a large "Proceed to Checkout" button, along with other design tricks, Defendant ensured consumers did not and could not determine the truth: at the expiration of the subscription period, users were automatically renewed and charged for

additional memberships and their subscriptions could not be cancelled. Worse yet, users, like Plaintiff, who click "3 Day Trial" were automatically enrolled in the premium and more expensive 30-Day membership that included streaming and downloads.

30. This is far from the norm in electronic commerce in general. While "free trials" or shorter trials that convert to recurring memberships may be common in e-commerce, nearly all platforms in electronic commerce prominently state directly adjacent to the "start trial" button that failure to cancel will result in automatic renewal and provide the terms of that renewal. Indeed, such prominent placement is mandated by law in many states, including California. Moreover, all platforms in electronic commerce provide users an opportunity to cancel their memberships in a timely fashion.

31. Contrary to the norm and common procedures, Defendant did not alert users (let alone prominently) that it would be (1) subject to additional recurring and expensive fees, and (2) impossible to cancel a membership.

32. Defendant's bait-and-switch practice lured Plaintiff and other consumers into purchasing memberships without informing consumers that their memberships would automatically renew and based on the (false) implied promise that cancellation is possible. In return, once armed with consumers' credit card information, Defendant secretly charged Plaintiff's card for various additional fees without providing any notice and without obtaining their affirmative consent.

**IV. Evil Angel Does Not Cancel Memberships Even When Consumers Request That They Do So**

33. Defendant routinely fails to cancel consumer subscriptions. In that regard, Plaintiff's experience is informative.

34. Plaintiff signed up for Defendant's three-day trial with the understanding that he was providing his credit card information for a one-time charge. After signing up for a subscription, out of an abundance of caution, and without being required to do so, Plaintiff proactively attempted to cancel his subscription online before the end of the trial.

35. Despite entering the proper username and password, Plaintiff was not able to log in to his account through no fault of his own. Plaintiff tried to reset his password to log in and cancel his trial, but the reset password link Defendant provided did not work.

36. Unable to login to his account, Plaintiff then emailed Defendant's customer service to cancel his subscription. Defendant did not respond to this email.

37. Plaintiff timely cancelled his membership before the three-day subscription expired. Plaintiff reasonably understood that he would incur no further charges.

38. Despite cancelling his subscription, Defendant continued to bill Plaintiff, both for the underlying membership, and for various other charges that became reoccurring.

39. Plaintiff only noticed these charges upon looking at his credit card bill at the end of the month. Plaintiff would never have known that he was being charged surreptitiously had he not checked his bill.

40. Plaintiff contacted Defendant but was unable to get a response. Thus, Plaintiff instructed his bank to decline the charges. Defendant continues to (unlawfully) charge Plaintiff to this day.

41. Plaintiff faces an imminent threat of future harm. Plaintiff would buy a (limited term, non-renewing) subscription to Defendant's website if he could feel sure that Defendant would not illegally auto-renew him. But without an injunction, he cannot trust that Defendant will halt the deceptive conduct alleged herein.

## V. Other Consumer Complaints Confirm Plaintiff's Experience Is Not Unique

42. A review of consumer complaints online confirm Plaintiff's experience is far from unusual and is indicative of a broader problem. One user wrote the following:

- I decided to buy an evil angel porn trial this evening and I decided to cancel right after. But I don't know how and whenever I go to the cancel link it takes me to some random fame care website and it asks for my debit card info. What should I do, I put my debit card on hold so [n]o

7
CLASS ACTION COMPLAINT

more transactions can come through. I'm in a bit of a pickle[.][4]

## VI. Defendant's Conduct Breaches its Contract with Consumers

43. Defendant's conduct as described herein breaches its contract with consumers.

44. Plaintiff and the putative class members did not agree to be charged for anything more than the single membership they signed up for.

45. By charging Plaintiff and class members for additional fees (likely in the form of additional memberships) that they did not affirmatively select or accept, Defendant breached (and continues to breach) its contracts.

46. Moreover, Defendant's failure to cancel memberships breaches its contract with consumers, especially given Defendant's representations that a membership could be cancelled before the trial period is up.

## **CLASS ALLEGATIONS**

47. Plaintiff brings this action on behalf of himself, and all others similarly situated persons, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). The proposed classes are defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, signed up for an Evil Angel membership and subsequently paid more than the Evil Angel subscription fee to Defendant (the "Bait & Switch Class").

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification cancelled their Evil Angel subscription but were subsequently charged by Defendant (the "Cancellation Class").

48. The Bait & Switch Class and the Cancellation Class shall be collectively referred to as the "Classes."

49. In addition to the proposed nationwide Classes, Plaintiff also brings this action on behalf of Texas subclasses.

---

[4] https://www.reddit.com/r/CustomerService/comments/jrcvxb/evil_angel_subscription/ (last accessed March 27, 2024)

8
CLASS ACTION COMPLAINT

50. Excluded from the Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

51. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

52. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Classes. Moreover, adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Such common legal or factual questions include, but are not limited to:

   a. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;
   b. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;
   c. Whether Defendant's alleged conduct constitutes violations of the laws asserted;
   d. Whether Defendant breached its contract with consumers;
   e. Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations;
   f. Whether Defendant was unjustly enriched;
   g. Whether Plaintiff and the Classes have been damaged and, if so, the proper measure of damages; and

      h.     Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

53. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

54. It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. The likelihood that individual class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the comparatively modest amount of monetary relief available for each individual class member.

55. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Defendant, as described herein, and they assert the same legal theory. Moreover, Plaintiff is not subject to any unique defenses.

56. Plaintiff is more than adequate representative of the Classes in that Plaintiff is a Defendant customer and has suffered damages as a result of Defendant's misconduct. In addition:

      a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of

himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

57. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

58. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive, equitable and declaratory relief with respect to the Classes as a whole.

59. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CAUSE OF ACTION

**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

60. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

61. Plaintiff and Defendant contracted for certain services.

62. No contract provision authorizes Defendant to charge consumers for (1) more than the one membership they affirmatively select; or (2) additional or unexpected charges if they cancel timely, which Plaintiff did.

63. Therefore, Defendant breached the terms of its contract.

64. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Stated differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

65. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

66. Defendant breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein by refusing to permit Plaintiff to cancel its membership and/or charging various miscellaneous fees after Plaintiff timely canceled his membership.

67. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

68. Plaintiff and members of the Classes have sustained damages as a result of Defendant's breaches of the contract.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

69. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

70. California law applies to the class because California has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal

12
CLASS ACTION COMPLAINT

place of business of Defendant is in California, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to automatic renewal and cancellation policies.

71. Defendant's corporate decisions with regard to its marketing representations were likely made from California and its tortious and deceptive conduct emanated from this state.

72. The UCL defines "unfair competition" to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

73. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

74. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

75. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

76. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unfair business practices—but only that such practices occurred.

77. Defendant's conduct described herein is "unfair" because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Classes, and the public. Specifically, Defendant, *inter alia*:

   a. Concealed the fact that the trial period would renew automatically and impose reoccurring charges;

    b. Failed to disclose the automatic renewal clause and cancellation procedure clearly and conspicuously on its web page at the time customers signed up for a subscription;

    c. Failed to apprise consumers of the various terms they were accepting;

    d. Charged consumers for one subscription, only to tack on consumers additional, unexpected, and miscellaneous fees without providing notice to consumers of same;

    e. Charged consumers for one subscription, only to tack on additional, unexpected, and miscellaneous fees after consumers attempted to and/or did timely cancel their memberships; and

    f. Lured consumers into signing up for a subscription only to make it impossible to cancel same, thereby "permitting" Defendant to charge consumers additional fees.

78. Defendant's conduct amounted to a bait and switch.

79. Plaintiff and the Classes could not have reasonably avoided this injury. Defendant's representations were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternative to further Defendant's legitimate business interests, such as clearly and conspicuously disclosing its automatic renewal terms and cancellation policy.

80. Defendant's conduct is "fraudulent" because, *inter alia*, its representations and deficient disclosures were misleading and likely to deceive Plaintiff and other reasonable consumers. Defendant's conduct is also fraudulent because it affirmatively and knowingly misrepresented to its consumers that they could sign up for a membership that could be cancelled without incurring further charges and/or consumers would not be charged for unexpected fees.

81. Defendant's conduct was "unlawful" because it violated the CLRA as discussed in Count III.

82. Despite being made aware of consumer complaints, Defendant did not take any effective measures to ensure that consumers are clearly made aware of the automatic renewal nature of Evil Angel's subscriptions, nor did it change its billing practices to obtain affirmative consent from consumers before it placed monthly charges on their credit or debit cards.

83. Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

84. Plaintiff relied on Defendant's representations to sign up for a three-day subscription. Defendant's misleading misrepresentations were a substantial factor in Plaintiff's purchase decision. If he had known about the automatic renewal scheme, he would not have purchased his initial trial membership.

85. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

86. Defendant's wrongful conduct is ongoing and presents a continuing threat to Class members.

87. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks restitution, disgorgement, and an injunction enjoining Defendant from continuing to engage in the unfair business practices described above.

### THIRD CAUSE OF ACTION

**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

88. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

89. Defendant's adult entertainment service and subscriptions utilized by Plaintiff and the Classes are a "service" within the meaning of Cal. Civ. Code. § 1761(b), and its "subscriptions" are "goods" within the meaning of Cal. Civ. Code. § 1761(a).

90. Plaintiff and each member of the proposed Classes are consumers as defined by Cal. Civ. Code. § 1761(d).

91. Defendant's sale of subscriptions to consumers were "transactions" within the meaning of Cal. Civ. Code. § 1761(e).

92. Defendant violated, and continues to violate, the CLRA by, *inter alia*:
   a. Concealing the fact that the trial period would renew automatically and impose reoccurring charges;
   b. Failing to disclose the automatic renewal clause and cancellation procedure clearly and conspicuously on its web page at the time customers signed up for a subscription;
   c. Failing to apprise consumers of the various terms they were accepting;
   d. Luring consumers into signing up for a subscription only to make it impossible to cancel same, thereby "permitting" Defendant to charge consumers additional fees;
   e. Charging consumers for one initial subscription, only to tack on additional, unexpected, and miscellaneous fees without providing notice to consumers of same; and
   f. Charging consumers for one initial subscription, only to charge consumers additional, unexpected, and miscellaneous fees after they attempted to and/or did cancel their membership.

93. Defendant's conduct violated the following provisions of Cal. Civ. Code § 1770:
   a. "Representing that goods or services have . . . characteristics . . . that they do not have";
   b. "Using deceptive representations . . . in connections with . . . services"; and
   c. "Advertising goods or services with intent not to sell them as advertised."

94.	Defendant affirmatively and knowingly misrepresented to its consumers that they could sign up for a membership that could be cancelled without incurring further charges and/or consumers would not be charged for unexpected fees other than the membership.

95.	Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

96.	Plaintiff relied on Defendant's representations to sign up for a three-day subscription.

97.	Despite being made aware of consumer complaints, Defendant did not take any effective measures to ensure that consumers are clearly made aware of the automatic renewal nature of Evil Angel's subscriptions, nor did it change its billing practices to obtain affirmative consent from consumers before it placed monthly charges on their credit or debit cards.

98.	As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

99.	Defendant's wrongful conduct is ongoing and presents a continuing threat to Class members.

100.	Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks injunctive and declaratory relief on behalf of the general public for violations of the CLRA.

101.	On March 28, 2024, pursuant to Cal. Civ. Code § 1782(a), Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that, *inter alia*, it correct same. Plaintiff will amend this Complaint to seek damages if Defendant does not comply with Cal. Civ. Code § 1782(b).

## FOURTH CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

102.	Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

103. This claim is plead in the alternative to Count I to the extent there was no contract between the parties.

104. Plaintiff and the Class members conferred a monetary benefit on Defendant by paying monies to Defendant for a subscription, in addition to various other charges procured by Defendant that were miscellaneous, unexpected and/or not approved by Plaintiff and the Class members.

105. Defendant had knowingly and voluntarily accepted and retained these benefits.

106. The circumstances are such that it would be unequitable for Defendant to retain the benefits it received from Plaintiff and the Class members because, as fully described herein, Plaintiff never agreed to pay these additional monies and tried to recover them to no avail.

107. Through its conduct alleged herein, Defendant was unjustly enriched to the detriment of Plaintiff and the Class members.

108. As a result of Defendant's wrongful conduct, Plaintiff and Class members are entitled to restitution and disgorgement of all profits, benefits and other compensation obtained by Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, pray for a judgment:

(a) Certifying the Class as requested herein;

(b) Appointing Plaintiff as Class Representative;

(c) Appointing Plaintiff's attorneys as Class Counsel;

(d) Declaring Defendant's billing practices and policies to be in breach of its contract with customers;

(e) Enjoining Defendant from the unlawful conduct alleged herein;

(f) Requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(g) Awarding Plaintiff and the Class damages under common law and/or by statute, including compensatory and punitive, according to proof at trial, along with interest on such sums at the maximum legal rate;

(h) For reasonable attorneys' fees and costs of suit, along with pre-judgment and post-judgment interest; and

(i) Awarding such other and further relief as this Court deems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: March 27, 2024

Respectfully submitted,

*/s/ Scott Edelsberg*
Scott Edelsberg (SBN 330090)
Gabriel Mandler (*Pro Hac Vice* forthcoming)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
gabriel@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (305) 975-3320

*Counsel for Plaintiff and the Proposed Classes*